UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NORMAN BELL,

        Plaintiff,

                              **MEMORANDUM OF
                              LAW AND ORDER**

v.                                         Civil File No. 22-2076 (MJD/JFD)

NORTH DAKOTA UNIVERSITY
SYSTEM,

        Defendant.

Kathleen M. Wagner, Wagner Law, LLC, Joseph M. Panvini, McCarthy Law PLC, Counsel for Plaintiff.

James E. Nocolai and Elizabeth A. Kriz, North Dakota Attorney General's Office, Counsel for Defendant.

**I.     INTRODUCTION**

Plaintiff Norman Bell sued the North Dakota University System ("NDUS") under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, <u>et</u> <u>seq.</u>, for providing inaccurate information to credit reporting agencies. NDUS filed a motion to dismiss the complaint based, in part, on sovereign immunity. For the reasons discussed below, the Court finds that NDUS has satisfied its burden to show it is entitled to sovereign immunity. North Dakota's universities are an arm of the

1

state government.  In addition, North Dakota's universities are "under the absolute and exclusive control of the state," N.D. Const. art. VIII § 5, and any damages award would likely come from the state treasury.  Finally, North Dakota has not consented to be sued in federal court.  See N.D. Cent. Code § 32-12.2-10.  Accordingly, Defendant NDUS's Motion to Dismiss (Doc. 9) will be granted.

## II. RELEVANT FACTS

In reviewing a motion to dismiss, the Court takes all facts alleged in the Complaint ("Compl.") as true.  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555-56 (2007); Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).  Plaintiff ("Bell") had a student loan with Defendant NDUS that was paid in full as of August 2021. (Compl. ¶¶ 11-12.)  In June 2022, false information appeared on Bell's consumer credit reports stating Bell's NDUS account was still delinquent with a past due balance owing of approximately $8,329.  (Id. ¶¶ 14-16.)  NDUS reported this false information.  (Id. ¶ 14.)  This information harms Bell because it does not accurately reflect his credit history and credit worthiness.  (Id. ¶ 15.)

On June 28, 2022, Bell sent letters to credit reporting agencies ("CRAs") Equifax and TransUnion disputing the inaccurate information and requesting "a description of the procedure used to determine the accuracy and completeness of

2

the information" in dispute.  (Id. ¶ 17.)  Upon information and belief, Equifax and TransUnion each forwarded his dispute to NDUS for further investigation and NDUS received notification of the dispute.  (Id. ¶¶ 18-19.)

Neither NDUS nor the CRAs conducted reasonable investigations into Bell's complaint.  (Id. ¶¶ 20-21.)  NDUS failed to instruct the CRAs to remove false information from Bell's credit reports and the CRAs did not do so.  (Id. ¶¶ 22-24.)

Bell sued NDUS and the CRAs for violations of the Fair Credit Reporting Act ("FCRA") seeking costs, fees, and statutory and punitive damages from all defendants.  (Id. ¶¶ 26-46.)  On November 29, 2022 and January 4, 2023, Bell voluntarily dismissed Equifax and TransUnion from the lawsuit.  (Docs. 20, 26.)

**III.   WHETHER THE COMPLAINT SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) FOR LACK OF JURISDICTION**

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide."  Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).  "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the

3

cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (emphasis added) (citation omitted).

### A.   Sovereign Immunity Legal Standards

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State. . . .

The Eleventh Amendment "is a specific constitutional bar against hearing even federal claims that otherwise would be within the jurisdiction of the federal courts." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 120 (1984) (emphasis in original) (citations omitted); Kula v. State of Neb., 9 F.3d 114, at *1 (8th Cir. 1993) (unpublished table decision) (holding that sovereign immunity barred plaintiff's § 1983 claims against state) (citing Pennhurst, 465 U.S. at 99-100).  Although sovereign immunity may be waived by a state, "[t]he interests of Federalism require that such a waiver be clear and unequivocal." Cooper v. St. Cloud State Univ., 226 F.3d 964, 969 (8th Cir. 2000) (citation omitted).  NDUS bears the burden to show it is entitled to sovereign immunity.  See Northland Baptist Church of St. Paul, Minn. v. Walz, 530 F. Supp. 3d 790, 802 (D. Minn. 2021), aff'd sub nom. Glow In One Mini Golf, LLC v. Walz, 37 F.4th 1365 (8th Cir.

2022), cert. denied sub nom. Glow in One Mini Golf v. Walz, No. 22-438, 2023 WL 124080 (U.S. Jan. 9, 2023).

> Federal courts have confronted with some regularity the question of whether state universities share in their respective state's eleventh amendment immunity; the vast majority of courts have found that they do. The fact that an overwhelming majority of state universities possess eleventh amendment immunity, however, does not control the outcome. . . . Each state university claiming eleventh amendment immunity must be considered on the basis of its own particular circumstances.
>
> In Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985), we . . . established a framework for determining whether the eleventh amendment applies to a subdivision of the state:
>
>> Courts typically look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury.

Sherman v. Curators of Univ. of Missouri, 16 F.3d 860, 862–63 (8th Cir. 1994) (cleaned up). A party cannot structure its resources so as to pay all damages out of state funds and therefore "create" Eleventh Amendment immunity. Id. at 864-65. Thus, an important question is whether any judgment against NDUS "can be paid from non-state funds under [NDUS's] discretionary control." Id. at 865.

### B.   Bell's Arguments

Bell asserts that NDUS can pay any judgment against it with non-state funds. He cites a press release from NDUS's website that states that "money appropriated from the general fund of the State of North Dakota accounts for

5

approximately 26% of NDUS's total $2.6 billion operational budget. The remaining funding comprises tuition, auxiliary revenues, state and federal grants, and other local revenue funds." (Doc. 24 at 7-8) (quoting North Dakota University System, <u>Higher education students will benefit by hard work of the 67th Legislative Assembly</u>, https://ndus.edu/2021/05/06/higher-educationsees-budget-increase-at-the-conclusion-of-the-67th-legislative-assembly higher-education-sees-budget-increase-at-the-conclusion-of-the-67th-legislative-assembly/ [last visited by the Court Jan. 19, 2023].) Bell argues that the potential damage award in this case would be less than 1/1000% of NDUS's operating budget and "it would seem there are non-state funds from which a judgment could be paid." (<u>Id.</u> at 8.)

Bell also notes that <u>Sherman</u> lists nine "additional" factors courts may consider when deciding if universities share in their state's sovereign immunity, some of which are duplicative of factors discussed above. (<u>Id.</u> at 6-7 n.2 (citing <u>Sherman</u>, 16 F.3d at 865 n.6).) Bell, however, bases no arguments on these factors.

  C. **Analysis**

The Eighth Circuit, the District of North Dakota, and the North Dakota Supreme Court all hold that North Dakota's universities are an arm of the state

6

of North Dakota and are entitled to sovereign immunity. See, e.g., Rakow v. North Dakota ex rel. State Bd. of Higher Educ., 208 F.3d 218, at *1 (8th Cir. 2000) (unpublished table decision) (citing Pennhurst, 465 U.S. at 106; Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446–47 (8th Cir. 1995)); Holbach v. Jenkins, No. 4:09-CV-026, 2009 WL 2382756, at *7 (D.N.D. July 30, 2009), aff'd, 366 F. App'x 703 (8th Cir. Feb. 23, 2010); Bradford v. Regents of Univ. of N.D., No. 2:15-CV-39, 2015 WL 13648357, at *3 (D.N.D. Aug. 12, 2015) (citation omitted); Leadbetter v. Rose, 467 N.W.2d 431, 432 (N.D. 1991), overruled on other grounds, Bulman v. Hulstrand Const. Co., Inc., 521 N.W.2d 632 (N.D. 1994) (abolishing sovereign immunity for tort liability).  In addition, universities in the North Dakota system are "under the absolute and exclusive control of the state." N.D. Const. art. VIII § 5.

North Dakota's institutions of higher education are part of a unified system called "the North Dakota university system," which is under control of the state board of higher education that is comprised of members appointed by the governor with the consent of the senate.  N.D. Cent. Code §§ 15-10-01.2, 15-10-02.  Board members are paid from state funds and the board must "report to the legislative assembly during each regular legislative session regarding the

7

status of higher education in [the] state." Id. §§ 15-10-08, 15-10-14.2. North Dakota Century Code § 15-10-12 authorizes the state board of higher education to receive donations, gifts, grants, and bequests on behalf of institutions of higher education. A special revenue fund is established in the state treasury under the control of the board for each institution where tuition monies and other monies such as rent, interest or income from land, and other certain sources "must be deposited in the institution special revenue funds." Id. Monies in the special revenue funds must be expended in accordance with the state constitution and are subject to legislative appropriations. Id.

The Court finds that North Dakota's state universities are under the control of the state. See Leadbetter, 467 N.W.2d at 433 ("The appointment of the Board of Higher Education by the governor with the consent of the Senate is indicative of the State's retention of a measure of control over the governing body of [the universities].").

Although Bell asserts that any award of damages in this case can be paid from monies other than those provided by the general fund of the State of North Dakota, that argument is speculative at best. Restricted grants, donations, and bequests must be used only for their intended purposes. N.D. Cent. Code § 15-

10-12. Other revenues are promptly deposited into special revenue funds and are subject to the limits discussed above. See Leadbetter, 467 N.W.2d at 434 (rejecting argument that damages award against state university could be paid from non-state funds). Thus, monies other than those appropriated by the North Dakota Legislative Assembly are "part of the State fund for use by [state universities]. Any judgment against [NDUS] would therefore come from the State treasury or other sources of State funds," Id. at 433-34, and not from "non-state funds under [NDUS's] discretionary control," Sherman, 16 F.3d at 865. As the Constitution of North Dakota provides, its universities are under the "absolute and exclusive control of the state." N.D. Const. art. VIII § 5. Contra Durham v. Parks, 564 F. Supp. 244, 248 (D. Minn. 1983) (holding that both the Minnesota Constitution and Minnesota legislature place Minnesota universities beyond state control).

Finally, North Dakota has not consented to suit in federal court. See N.D. Cent. Code § 32-12.2-10 (preserving Eleventh Amendment immunity). The District of Nebraska's analysis in Carter v. Smith is on point:

> The amended complaint contains claims based upon the FCRA. . . . The plaintiff has not suggested that Congress abrogated the defendant's sovereign immunity with respect to any of these claims. I note parenthetically that two district courts have concluded that

9

> since "Congress enacted the FCRA pursuant to its Commerce Clause power–instead of its power under section 5 of the Fourteenth Amendment–it lacked the authority to abrogate a state's sovereign immunity through that statute." Given the absence of any argument or authority to the contrary, I find that the defendant's sovereign immunity has not been abrogated. Similarly, since the plaintiff has offered no resistance to the defendant's argument that the State of Louisiana has not consented to be sued in this court, I must also conclude that the defendant has not waived its sovereign immunity.

4:05CV3159, 2006 WL 8458548, at *10 (D. Neb. Mar. 21, 2006) (citations omitted).

NDUS has satisfied its burden to show it is entitled to sovereign immunity. NDUS's motion to dismiss will be granted on this basis. It follows that the Court lacks jurisdiction to address the Parties' arguments related to dismissal under Rule 12(b)(6). See Steel Co., 523 U.S. at 94 (holding that without jurisdiction, a court may only "announc[e] the fact and dismiss[] the cause").

IV. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss **(Doc. 9)** is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 28, 2023         s/Michael J. Davis
                                 Michael J. Davis
                                 United States District Court

10